INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION 1547, Appellant and Cross–Appellee,

v.

Clay E. LINDGREN and Craig F. Van Amburg, Appellees and Cross–Appellants.

Nos. S–7424, S–7444.

Supreme Court of Alaska.

Aug. 13, 1999.

Rehearing Denied Sept. 23, 1999.

---

**40.** *Id.*

William F. Morse, Associate General Counsel, IBEW Local Union 1547, and Helene Antel Brooks, Anchorage, for Appellant and Cross–Appellee IBEW Local Union 1547.

James M. Hackett, Law Offices of James M. Hackett, Inc., Fairbanks, for Appellees and Cross–Appellants Lindgren and Van Amburg.

Before COMPTON, Chief Justice, RABINOWITZ, MATTHEWS, EASTAUGH, and FABE, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

Both parties to this appeal challenge aspects of the superior court's award of damages against a union for a breach of its duty of fair representation.

## II. FACTS AND PROCEEDINGS

Clay E. Lindgren and Craig F. Van Amburg were employed by the Fairbanks Municipal Utilities System (FMUS), an agency of the City of Fairbanks, in a bargaining unit represented by the International Brotherhood of Electrical Workers Local 1547 (IBEW). FMUS laid off Lindgren and Van Amburg effective January 10, 1992.

Lindgren and Van Amburg initially filed separate lawsuits against the City of Fairbanks and against certain FMUS supervisors (collectively the City) challenging their layoffs. Lindgren's complaint contained numerous legal theories, including loss of a protected merit position, loss of contractual rehire rights, violation of the Alaska Whistleblower Act,[1] and denial of a meaningful hearing in violation of 42 U.S.C. § 1983. Lindgren sought compensatory and punitive damages, reinstatement, interest, and attorney's fees. Van Amburg's complaint was similar except that it contained no Whistleblower statute allegations.

Some months later, Lindgren and Van Amburg filed another lawsuit in which the City, the Deputy City Manager–Utilities,[2] IBEW, and the union's business agent Pete Blair (collectively the IBEW) were defendants. The complaint in this action accused the defendants of conspiring to deprive the plaintiffs of their rights and alleged that IBEW had breached its duty of fair representation to the plaintiffs "by failing to protect plaintiffs' constitutionally protected property interests because of hostility or animus, and/or because of a lack of complete good faith and honesty and/or because of arbitrary conduct on the part of the defendant union."

In June 1994 Lindgren and Van Amburg settled their lawsuits against the City. Van Amburg received the principal sum of $35,000 and attorney's fees of $5,300 under Civil Rule 82. Lindgren received the principal sum of $155,000 plus Rule 82 attorney's fees of $13,800 and costs of $3,718.90. Van Amburg was reinstated, but Lindgren was not. Lindgren's settlement agreement recited that, if he returned to work at FMUS, he might "be subjected to hostility and animosity in the workplace by union members, given his pending lawsuit against the union." Finally, the City made pension contributions on behalf of each plaintiff for the period of January 13, 1992, to June 1, 1994.

But these settlements did not end the litigation, for the plaintiffs' claims against IBEW remained. Following a pretrial conference held shortly before the scheduled trial, the superior court issued an order directing the course of future proceedings. A jury trial on the question of IBEW's liability was ordered. With respect to damages, the plaintiffs' claims were limited to costs and attorney's fees incurred in privately prose-

1. AS 39.90.120(a).

2. His title has since changed to Special Projects Coordinator.

cuting their claims against the City. The order noted that the attorney's fees were incurred under contingent fee agreements, and that these agreements provided "a reasonable basis upon which to determine damages in this case." The court therefore "conclude[d], as a matter of law, that the appropriate measure of Plaintiffs' damages for attorney fees [was] the monies spent under the terms of their contingency fee agreement[s]." The court also allowed IBEW to offset that portion of each settlement which represented Civil Rule 82 attorney's fees, less the contingent fee percentage applied to the Rule 82 fees:

> Defendant, therefore, is entitled to offset two-thirds of the attorney fees paid by the City. In other words, Plaintiff Lindgren received $9,200 for attorney fees from the City which should be offset from his claim here. Plaintiff Van Amburg received $3,533 from the City in attorney fees that should be offset from his claim here.

IBEW argued that the Lindgren settlement represented in part punitive damages and damages under the Whistleblower statute that it either could not have sought or had no duty to seek in discharging its representational obligations. Therefore, IBEW argued that it should not be liable for attorney's fees spent to pursue these remedies. In response, the court ruled as follows:

> While the Court understands Defendant's arguments for apportionment of damages based on the Whistleblower statute and the concern for punitive damages, it is clear that the claim for wrongful discharge and breach of contract were substantial factors in the settlement of Plaintiffs' claims against the City. The settlement amounts themselves were calculated by looking at the lost wages Plaintiffs incurred and then providing reinstatement in Van Amburg's case and buying out reinstatement rights in Lindgren's case. Both of these remedies are available within the terms of the collective bargaining agreement. Hence, substantively the Court concludes that apportionment of damages among legal theories is not appropriate here. Prac-

tically, apportionment of damages among legal theories would be extremely difficult and highly speculative. Procedurally, the request for apportionment of damages is an affirmative defense that should have been pled, addressed in motion practice, and resolved far earlier than at trial. For all these reasons, Defendant's request that damages be apportioned among legal theories is hereby DENIED.

The court also explained the context of its order:

> The Court is concerned about the status of this matter at this very late stage of the proceedings. A number of critical issues were not addressed during motion practice. The proposed jury instructions are lacking, especially as to damages. Furthermore, the parties are submitting major legal issues to the Court in the form of proposed jury instructions. [Counsel for IBEW] has commented that the Court is going to have a difficult job in crafting jury instructions that guide the jury through the difficult damages issues. [Plaintiffs' attorney] has indicated that the Court will have its work cut out for it in preparing appropriate damage instructions. Jury instructions, however, were to be submitted by the parties that were consistent with the parties' respective theories of the case.
>
> It appears to the Court that while the parties are prepared to proceed to trial on the liability issues, they are not prepared to proceed on the issue of damages. Therefore, bifurcation of the two issues would be appropriate. However, for the reasons set forth below, the Court concludes that the Court can resolve the damages issue summarily while allowing the parties to proceed to trial on liability.

Trial by jury was held on the liability issues. The jury concluded that IBEW had breached its duty of fair representation and that Lindgren and Van Amburg had incurred attorney's fees that they otherwise would not have incurred as a result of IBEW's breach of duty.[3] The trial court then entered judgment in accordance with the pretrial order.

---

**3.** These conclusions were expressed as answers   to questions posed in a special verdict form.

Specifically, Lindgren was awarded the principal sum of $47,066.67 plus interest, costs, and attorney's fees, and Van Amburg was awarded the principal sum of $9,933 plus interest, costs, and attorney's fees.

IBEW appeals, raising numerous arguments. Briefly summarized, these arguments fall within three categories. First, IBEW argues the superior erred in awarding as damages for its breach of its duty of fair representation the attorney's fees incurred by the plaintiffs in prosecuting their cases against the City. Second, it contends the superior court should have held a hearing concerning the composition of the settlements to ensure that they did not include elements of damage that were not ascribable to IBEW's breach. Third, it argues the superior court erred in excluding certain evidence during the jury trial. For the reasons that follow, we reject the first and third arguments, but find merit in the second as to the settlement with Lindgren.

Lindgren and Van Amburg cross-appeal, arguing that the superior court's award of attorney's fees was insufficient. Lindgren also argues that the superior court erred by ruling that his damages were limited to costs and attorney's fees incurred in suing the City. For the reasons that follow, we reject the former argument but find merit in the latter.

## III. DISCUSSION

A. *The Superior Court Did Not Err by Awarding as Damages for Breach of IBEW's Duty of Fair Representation Attorney's Fees and Costs Incurred in Prosecuting the Case Against the City.*

■ IBEW asserts that the superior court erred in imposing joint and several liability. It contends that courts should apportion, between an employer and a union, damages caused by the employer's breach of the collective bargaining agreement and the union's inadequate representation of employees.

Contrary to IBEW's assertion, the superior court did not impose joint and several liability on IBEW. Instead, the court concluded that the amount of attorney's fees that the plaintiffs incurred in pursuing their claims against the City was a fair measure of the uncompensated damages that IBEW had caused by breaching its duty of fair representation.

IBEW argues that some method of apportionment of damages between the employer and IBEW should have been utilized, but it does not specify the appropriate method of apportionment. Further, IBEW does not distinguish between (1) damages that might have been jointly caused by the wrongful conduct of the City and IBEW and (2) damages that were solely caused by the wrongful conduct of one of them. Instead, IBEW generally refers to a number of federal cases, which, in turn, are not especially directive as to how damages should be allocated between employers and labor unions where there is both a breach of contract and a breach of the union's duty of fair representation.[4]

IBEW relies extensively on *Aguinaga v. United Food & Commercial Workers International Union*,[5] a case that reflects federal law in this area. The *Aguinaga* court stated:

> In hybrid § 301 cases, "[t]he governing principle[ ] is to apportion liability between the employer and the union according to the damage caused by the fault of each." *Vaca v. Sipes*, 386 U.S. 171, 197, 87 S.Ct. 903, 920, 17 L.Ed.2d 842 (1967). "[D]amages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer." *Id.* at 197–98, 87 S.Ct. at 920–21. The general rule that damages are to be apportioned between the employer and the union may not apply

**4.** Such cases, in federal jurisprudence, are referred to as "hybrid" cases. *See Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1469 n. 1 (10th Cir.1993). This is because an employee may not proceed directly against an employer without alleging and proving that the employee's union has breached its

duty to fairly represent the employee. *See Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

**5.** 993 F.2d 1463 (10th Cir.1993).

in situations where a union affirmatively caused the employer to commit the contract breach, or where the union and the employer actively participated in the other's breach. *Id.* at 197 n. 18, 87 S.Ct. at 920 n. 18; *see also Bennett v. Local Union No. 66,* 958 F.2d 1429, 1440 (7th Cir.1992). Rather, these situations may warrant the imposition of joint and several liability.[6]

Federal courts have upheld at least two methods of fault apportionment. In *Bowen v. United States Postal Service,*[7] the Supreme Court let stand an award of damages in a case where the trial court instructed the jury that it could attribute damages to the union based on the date of a hypothetical arbitration decision—the date when the employer would have reinstated the employee if the union had fulfilled its duty of fair representation.[8] The employer was held liable for damages before that date, and the union was liable for damages after that date. In *Aguinaga,* the Tenth Circuit upheld a district court's disposition of a hybrid case in which the trial court (1) calculated the total amount of damages caused in common by defendants, and (2) assessed shares of the total damages using a percentage of fault method. Specifically, the trial court apportioned twenty-five percent of the damages to the union and seventy-five percent of the damages to the employer.[9]

Federal law does not control this case, however, because the National Labor Relations Act excludes employers that are political subdivisions of a state.[10] Further, federal law contains a unique feature unreplicated in state law that may, as a practical matter, lead to different methods of allocating damages. As we noted in *Kollodge v. State:*

[F]ederal and Alaska law differ on the consequences which follow from a union's refusal to represent an employee. Under federal law the employee may not proceed directly against the employer without first proving a breach of the union's duty of fair representation. [*Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).] Alaska law places no such impediment on an employee's right to obtain direct review of the employer's decision to terminate the employee. *Casey v. City of Fairbanks,* 670 P.2d 1133, 1138 (Alaska 1983). The employee may obtain review in superior court or process his [grievance] through arbitration if permitted by the contract or regulations. *Id.* at 1138–39. This right of direct review would seem to make the action for breach of the duty of fair representation of less critical importance in state law than in federal law.[11]

Since, under federal law, an employer cannot be liable in a direct action by the employee unless the employee proves that the union has breached its duty of fair representation, damages against the employer and the union are often determined together in a single proceeding.[12] The need for some method of allocating damages is thus presented.

In this case, by contrast, IBEW was the only defendant. Lindgren and Van Amburg had previously settled their claims against the City. All that may be needed to fully compensate the employees here is to award them the costs and attorney's fees they incurred in bringing suit against the City. Because IBEW breached its duty of fair representation, these expenses are logically recoverable as damages for that breach without deciding whether to adopt any particular allocation formula. It is

---

6. *Id.* at 1474.

7. 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983).

8. The Court did not approve nor disapprove such a method because the union had not objected to the jury instructions based upon the manner of apportionment. *See id.* at 230 n. 19, 103 S.Ct. 588.

9. *Aguinaga,* 993 F.2d at 1469.

10. *See* 29 U.S.C. § 152(2) (1994).

11. 757 P.2d 1028, 1034 (Alaska 1988).

12. *See, e.g., Bowen v. United States Postal Serv.,* 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983); *Aguinaga v. United Food & Commercial Workers Int'l Union,* 993 F.2d 1463 (10th Cir. 1993); *Bennett v. Local Union No. 66,* 958 F.2d 1429 (7th Cir.1992); *Ames v. Westinghouse Elec. Corp.,* 864 F.2d 289 (3rd Cir.1988) *Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270 (9th Cir. 1983).

therefore presently unnecessary to decide whether the federal model(s) of apportionment should generally be followed as a matter of state law in cases where damages include more than the reimbursement of an employee's costs and attorney's fees.

■ IBEW next argues that, if it is to be assessed attorney's fees, the value of those fees should not be determined by the mechanical use of a contingency fee.

Despite the rule applicable in federal litigation that attorney's fees are not ordinarily recoverable by the prevailing party,[13] federal courts have frequently permitted litigants to recover from a union that has breached its duty of fair representation attorney's fees that the litigant reasonably incurred in pursuing a claim against the employer.[14] IBEW does not contend that Alaska law should differ from federal law on this point, but argues that the award of attorney's fees should not be based on a contingent fee contract.

IBEW argues that a "lodestar" computation—time spent multiplied by a reasonable hourly rate—should have been used. IBEW cites several cases suggesting that federal courts apply the lodestar method of calculation in cases where attorney's fees are statutorily authorized as an award to the successful litigant. These cases are inapplicable, however, as they deal with attorney's fees incurred in prosecuting a defendant. In contrast, the attorney's fees awarded in this case are an element of damages incurred in prosecuting not the defendant, but a third party

that the defendant was contractually obligated to prosecute.[15] Further, calculating damages by using the lodestar method when the attorney's fees were incurred under a contingent fee contract will only randomly and occasionally achieve the goal of making the employee whole. Where there is a contingent fee contract, awarding the fee actually incurred will achieve the desired goal.

■ IBEW also argues that the "make whole remedial goal" of a claim against a union for breach of the union's duty of fair representation militates against a rule of "automatically awarding as damages the attorney fees [an employee] owed his counsel according to a contingency fee arrangement." We agree that a court should not automatically award the amount that an employee must pay as a contingent fee. Instead, contingent fees must pass the test of reasonableness. If they are found reasonable, they may be awarded. Here, the superior court made such a finding.

In summary, the trial court found that the plaintiffs had been made whole by the settlement they received from the City, except to the extent that they were required to pay for the representation IBEW should have furnished as part of its responsibilities. The trial court thus awarded these payments as damages. This was a logical and straightforward method, well designed to afford full compensation to the plaintiffs. Further, the fact that the damages were based on the contingent fees incurred by the plaintiffs

**13.** See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

**14.** See, e.g., Bennett v. Local Union No. 66, 958 F.2d 1429, 1440 (7th Cir.1992) (stating that attorney fees in breach of duty of representation cases are not awarded as a penalty "but rather as proximate consequential damages for the union's failure to provide representation: the expense that [the employee] has incurred in pursing her contractual grievance against the Company 'is not merely a result of the harm that [the Union] did; it is the harm itself.' "); Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148 (2nd Cir.1994); Ames v. Westinghouse Elec. Corp., 864 F.2d 289, 293 (3d Cir.1988); Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270, 1275–76 (9th Cir.1983); Self v. Drivers, Chauffeurs,

Warehousemen & Helpers Local Union No. 61, 620 F.2d 439, 444 (4th Cir.1980).

**15.** See Scott v. Local Union 377, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, 548 F.2d 1244, 1246 (6th Cir.1977). The court there stated:

A different situation is presented, however, in [an] action against the Union, for in that action the principal element of Scott's damages is the amount which it cost him in attorney fees and other expenses to do that which the union was obliged but failed to do on his behalf. He was, therefore, entitled to include in his damages against the Union the amount which he reasonably expended in attorney fees and other costs in prosecuting his claim against the company, costs which he would not have incurred but for the Union's breach.

does not taint the damage award, since the contingent fee contracts were found reasonable. We therefore approve in principle the award as damages of attorney's fees and costs incurred by the plaintiffs in proceeding against the City.

B. *A Remand of the Judgment in Favor of Lindgren is Necessary to Ensure that His Settlement with the City Did Not Include Elements of Damage that Could Not Be Attributed to IBEW's Breach.*

■ The union argues that some portion of the settlements represent damages for plaintiffs' statutory claims that the union could not have prosecuted on the plaintiffs' behalf. The pretrial order stated that the whole amount of the settlements was sufficiently related to the claims that should have been brought under the collective bargaining agreement so that no breakdown of the settlement elements is necessary. IBEW effectively refutes this aspect of the order only with respect to punitive damages under the Alaska Whistleblower Act. Since Van Amburg had no claim under the act, this point only applies to Lindgren's settlement.

An affidavit of the City's attorney suggests that the possibility of a punitive award played an important role in the City's decision to settle. Since punitive damages would not have been available under the collective bargaining agreement, IBEW in full performance of its representational obligations could not have obtained such damages for Lindgren. Therefore, it would not be just to charge IBEW with attorney's fees insofar as those attorney's fees are allocable to punitive damages. For this reason, a remand is necessary to enable the court to conduct an evidentiary hearing and determine what portion, if any, of Lindgren's settlement represents punitive damages.

■ IBEW also argues that the award overcompensated the employees because the superior court declined to consider (1) that

"[a]fter their layoff, FMUS offered plaintiffs employment in positions other than in engineering," and (2) that Lindgren had interim earnings that the court should have deducted from his damage award. The first point lacks merit because the employees were not required to accept "positions other than in engineering" to mitigate their damages.[16]

■ IBEW's second point is more persuasive: that Lindgren worked during his layoff and that credit should have been given in his settlement for the amounts that he earned. The argument is, essentially, that the settlement was unreasonably high and therefore exceeds that which can fairly be charged to the union.

We agree that IBEW should be permitted to present evidence on this point and that a remand is necessary for this purpose. After considering the evidence, the superior court should determine whether the amount received by Lindgren in the settlement with the City was excessive in that it fell outside the range of awards that could be reasonably expected had the union fulfilled its duty of fair representation. If excessiveness is found, attorney's fees to the extent of the excessiveness should not be awarded as damages.

IBEW also argues that the award of contingent fees overcharged the union because the fees were inflated by compensation for earnings for Lindgren calculated after the time of the settlement. IBEW phrases this argument as follows: "If a contingency fee can be the basis for a union's damages the settlement to which the fee equation is applied may not include the value of front pay the employee accepted after declining reinstatement." IBEW argues that it could not have obtained damages for lost income for Lindgren after he was offered and declined reinstatement.

We agree that a remand is necessary on this point. This issue is a mixed question of law and fact. On remand the court should

---

**16.** *See, e.g., N.L.R.B. v. Laredo Packing Co.,* 730 F.2d 405, 407–08 (5th Cir.1984) ("A claimant's failure ... to accept substantially equivalent employment ... without good cause constitute[s] [a] failure to mitigate]." The court held that truck drivers who refused an offer of nondriving employment that was "significantly dissimilar to truck driving" could not be charged with a failure to properly mitigate.).

invite briefs on the legal question as to whether lost income after reinstatement was offered and declined would have been a remedy available to Lindgren under the collective bargaining agreement. If such a remedy was available, the court should determine whether this aspect of the settlement was excessive. If such a remedy was not available, the court should determine what portion of the settlement represents such lost income and reduce the damage award by the amount of fees allocable to it.

### C. The Superior Court Did Not Err in Its Evidentiary Rulings During the Jury Trial.

 We next consider IBEW's argument that the superior court "erred in prohibiting the IBEW from presenting evidence that Lindgren accused FMUS of fraud and cover-up to gain Whistleblower protection from an anticipated layoff, . . . [thereby denying] the IBEW a fair trial on the issues of liability and causation." IBEW argues that we should therefore order a new trial.

This argument lacks merit. The evidence IBEW sought to present to the jury—which IBEW claims would establish that Lindgren would have pursued Whistleblower litigation regardless of the Union's breach of its duty of fair representation—would have been of no probative value as to whether IBEW breached its duty of fair representation and whether that breach caused at least some damage.

IBEW also argues that the superior court erred by "not permitting the IBEW to present to the jury the terms of the settlement with the City." IBEW claims that the evidence it sought to present would have enabled the jury to conclude that "the attorney fees incurred by plaintiffs were attributable not wholly to the union's breach, but in part to the pursuit of parallel but distinct claims." This evidence also relates to the amount of damages and was irrelevant to the issues that were presented to the jury.

### D. The Cross–Appeal

As cross-appellants, Lindgren and Van Amburg make two arguments. First, both Lindgren and Van Amburg claim that the superior court's award of attorney's fees was inadequate. The argument is so confusingly presented that we are unable to understand it. Nevertheless, we have reviewed the superior court's award of attorney's fees and conclude that the only error committed was a $32.67 transposition error that favored Van Amburg.[17]

Second, Lindgren argues that the superior court's award failed to make him whole because the court did not order IBEW to compensate him for future damages. We agree that a remand is necessary on this point. In its pre-trial order, the superior court stated that the City "[bought] out reinstatement rights in Lindgren's case" and that except "for costs and attorney fees" Lindgren was "made whole by [his] settlement with the City." The superior court lacked a sufficient basis for this conclusion. The pre-trial order was not entered in response to a motion for summary judgment or following an evidentiary hearing. Further, as mentioned above, the court never determined as a matter of fact or law whether Lindgren was entitled to an award of future damages. Accordingly, the superior court's conclusion that, except for costs and attorney's fees, Lindgren was "made whole by his settlement with the City" must be vacated. Whether Lindgren's settlement was fully compensatory must be litigated on remand.

### IV. CONCLUSION

The judgment of the superior court is AFFIRMED as to Van Amburg and VACATED as to Lindgren. Lindgren's case is REMANDED for further proceedings consistent with this opinion.

---

17. Based on the assumption that the superior court's award of attorney's fees was insufficient and that he is entitled to receive additional attorney's fees, Van Amburg argues that the superior court applied the wrong pre-judgment interest rate. Our conclusion that the cross-appellants are not entitled to a greater award than they actually received disposes of this argument.