Nicholas A. GEFRE and Charles T. Bec individually and as a derivative action on behalf of Petro Alaska, Inc., an Alaska corporation, Appellants/Cross–Appellees,

v.

DAVIS WRIGHT TREMAINE, LLP; Jon S. Dawson; and Richard A. Klobucher, Appellees/Cross–Appellants.

Nos. S–15876, S–15895.

Supreme Court of Alaska.

April 29, 2016.

Rehearing Denied June 7, 2016.

**124.** AS 29.45.500(a)–(b).

Before: STOWERS, Chief Justice, FABE, WINFREE, MAASSEN, and BOLGER, Justices.

## Order

1. We described the factual history of this case in *Gefre v. Davis Wright Tremaine, LLP* (*Gefre I* ), the first appeal in the case.[1] The underlying dispute involves a piece of real property initially leased and then purchased by Edward Steffen, one of three shareholder-directors of Petro Alaska.[2] Steffen claimed to be purchasing the property on behalf of the company, but in fact he took

1. See 306 P.3d 1264, 1267–70 (Alaska 2013).

2. *Id.* at 1267–68.

title in his own name.[3] Steffen had retained Davis Wright Tremaine, LLP (DWT) to represent Petro Alaska and DWT facilitated parts of Steffen's purchasing process.[4] Nicholas Gefre and Charles Beck, the other two shareholder-directors, discovered that Steffen had misappropriated the property and demanded that he transfer title to the company, but Steffen failed to do so.[5] DWT initially advised Steffen on this issue but then referred the matter to another law firm, recognizing a conflict of interest between their corporate representation of Petro Alaska and their representation of Steffen on these allegations made against him by the other shareholders on behalf of the company.[6]

2. Gefre and Beck, on behalf of Petro Alaska (collectively "Petro"), entered into a contingent fee agreement with litigation counsel in 2006 for the purpose of bringing suit against Steffen and possibly others. Through counsel, Petro sued Steffen to recover the property, but the statute of limitations under AS 09.10.230 had run.[7] Steffen nonetheless settled with Petro.[8] As a result of the settlement, Steffen transferred title to the property to Petro Alaska, and the other shareholders bought out Steffen's shares in the company.[9] Petro also sued DWT for malpractice in helping Steffen misappropriate the property and in failing to warn Petro of the statute of limitations on the AS 09.10.230 claim against Steffen.[10]

3. In the first appeal in this case, we concluded that the statute of limitations barred all of Petro's claims against Steffen and DWT except for a "limited legal malpractice" claim against DWT arising specifically from its failure to warn Petro "that potential causes of action against Steffen were set to be statutorily barred." [11] We also noted that, when the malpractice claim was addressed on remand, Petro could potentially recover "attorney's fees as special damages" in the case.[12] We explained "that a legal malpractice plaintiff may recover as actual damages the attorney['s] fees incurred as a result of the defendant's malpractice, so long as the plaintiff can demonstrate [he or] she would not have incurred the fees in the absence of the defendant's negligence." [13] So if Petro were successful on the legal malpractice claim on remand, "the fact-finder must determine what, if any, of [Petro's] attorney's fees incurred against Steffen would not have been incurred in the absence of DWT's ... specific wrongdoing, and, thus, are recoverable as damages." [14] But we cautioned that Petro "may not recover as special damages attorney's fees incurred in asserting claims against DWT." [15] We then vacated the judgment against Petro and remanded for further proceedings on the limited malpractice claim.[16] On remand, the parties filed numerous motions, and the superior court issued rulings on several motions for summary judgment and partial summary judgment. Portions of many of those rulings are appealed here, and we address them in turn.

4. First, this case is before us on appeal from the superior court's grant of summary judgment in favor of DWT on the question of damages. This question has two separate elements: (1) the proper scope of compensatory damages and (2) the proper measure of damages within that scope. Interpreting our

3. *Id.*

4. *Id.*

5. *Id.* at 1268.

6. *Id.* at 1269–70.

7. *Id.* at 1270, 1274. AS 09.10.230 bars "an action for the determination of a right or claim to or interest in real property" unless such action is commenced within the ten-year limitations period established by AS 09.10.030.

8. *Gefre I,* 306 P.3d at 1271.

9. *Id.*

10. *Id.* at 1270, 1274.

11. *Id.* at 1274.

12. *Id.* at 1281.

13. *Id.* (quoting *Nettleton v. Stogsdill,* 387 Ill. App.3d 743, 326 Ill.Dec. 601, 899 N.E.2d 1252, 1261 (2008)).

14. *Id.*

15. *Id.*

16. *Id.* at 1282.

decision in *Gefre I*, the superior court concluded that the scope of compensatory damages was limited to any additional attorney's fees that were incurred as a direct result of DWT's alleged malpractice. Within the scope of that attorney's-fees-as-damages claim, the superior court ruled that Petro could not recover the full amount of fees it had incurred because some of those fees must be attributed to the work that Petro's attorneys had done on the malpractice claims against DWT, not on the AS 09.10.230 claim against Steffen.

Petro argued before the superior court—and continues to argue here—that the appropriate measure of damages is the *full* amount of attorney's fees incurred under the contingency fee agreement because the only recovery Petro has received (and thus the only fees paid under the contingency agreement) arose from the compensable claim against Steffen when that claim was settled. Petro argued that Steffen would have transferred title and there would have been no need to sue him to recover the property if not for DWT's malpractice, so *any* attorney's fees incurred should be considered additional fees that "would not have been incurred in the absence of DWT's ... specific wrongdoing."[17] Petro also offered a hypothetical hourly fee approach, under which it would recover attorney's fees equivalent to the full reasonable value of the time spent working on the claim against Steffen. Petro's attorneys presented a breakdown showing their time spent working on that claim separated out from the time spent on the non-compensable claims against DWT. But the superior court ruled that any recovery must be based on the actual contingency agreement, not on this hourly billing approach. Despite Petro's willingness to apportion fees to different claims under its proposed hourly approach, and despite the superior court's suggestion that Petro might be able to recover *partial* attorney's fees incurred under the contingency agreement, Petro maintained that it should not be required to apportion the fees incurred under that agreement. When the

superior court ruled that Petro could neither recover the full amount of attorney's fees incurred under the agreement nor recover fees based on a hypothetical hourly rate, Petro indicated an unwillingness to pursue any other measure of damages.

6. Thus in the superior court's ruling on the issue of damages, it essentially invited the parties to file an appeal rather than delaying trial for further discovery and disclosures focused on a theory of recovery that Petro did not wish to pursue. The superior court did not conclude that there was no theory under which Petro could recover damages as a matter of law, only that Petro had chosen not to pursue any claim for damages other than those rejected by the superior court. The court suggested that "perhaps [Petro] should allow summary judgment to enter" in DWT's favor, which would give Petro the opportunity to appeal the question of the appropriate measure of damages. At a calendar call with the court, both parties accepted this proposed option. Counsel for Petro agreed that "it [did] not make sense for [the parties] to go through the show of a trial" given that Petro had "advanced ... theories and given the discovery and evidence as to them and the court [had] rejected them." Instead, the superior court entered summary judgment in favor of DWT, ruling that Petro had not put forward any acceptable theory under which it could recover damages. This summary judgment ruling gave the parties a chance to appeal this question as well as the superior court's other post-remand decisions.

■ 7. On the scope-of-damages question, we conclude that the superior court did not err in limiting Petro's compensatory damages to any additional attorney's fees incurred as a result of DWT's failure to warn of the expiring statute of limitations. To determine damages in a malpractice case, we have explained that "most civil malpractice plaintiffs[ ] will have to present a 'trial within a trial.'"[18] "[T]he goal of [the trial within a trial] is to determine what the result of the

---

17. *See id.* at 1281.

18. *Shaw v. State, Dep't of Admin.*, 861 P.2d 566, 573 (Alaska 1993) (quoting 2 Ronald E. Mallen &

Jeffrey M. Smith, Legal Malpractice § 27.1 (3d ed.1989)).

underlying proceeding or matter *should have been*."[19] The superior court properly applied that approach here. By the time we decided *Gefre I*, Petro had already settled with Steffen on the AS 09.10.230 claim and the property had been transferred to Petro.[20] In *Gefre I* we explained that "[b]ecause 'AS 09.10.230 contemplates a dispute over an interest in real property,' we have ... applied it [only] where the nature of the ownership interest was the central issue."[21] Thus AS 09.10.230 does not encompass claims for monetary damages, which are considered "merely attendant to an underlying conveyance of a property interest."[22] So by receiving title to the property, Petro had already achieved the only possible remedy on the underlying claim against Steffen. And the only claim against DWT that this court upheld in *Gefre I* was a claim for DWT's failure to warn Petro of the expiring statute of limitations on that AS 09.10.230 claim.[23] Accordingly, the superior court correctly concluded that the only compensatory damages available are the additional costs that Petro incurred in reaching this result, that is, the portion of fees that Petro would not have incurred in the absence of DWT's alleged malpractice.[24] These damages will be measured by determining the amount of fees that Petro incurred on the claim against Steffen and subtracting the amount of fees (if any) that would have been incurred even in the absence of the alleged malpractice.

■ 8. Regarding this measure of damages, we conclude that Petro is not precluded from arguing for recovery of its full attorney's fees. We therefore reverse the superi-

or court to the extent that it held that Petro is precluded from recovering the full amount of fees it incurred under the contingent fee agreement. Several separate but related issues factor into the measure of damages. First, the superior court was correct to conclude that there remain disputes of material fact regarding the "first side" of the damages equation: whether Petro would have nonetheless incurred attorney's fees even in the absence of DWT's alleged malpractice, or whether Steffen would have transferred title to the property without the need for a lawsuit (in which case, Petro argues, no fees would have been incurred). This question must be determined by the fact-finder on remand.

■ 9. Next, the superior court correctly concluded that the appropriate starting point for measuring damages is the actual amount of fees incurred under the contingent fee agreement, rather than the alternative hypothetical hourly approach that Petro also offered. Although we have sometimes approved of hypothetical hourly rates in other contexts,[25] our precedent makes clear that attorney's-fees-as-damages cases require assessment of the actual fees incurred.[26] In *International Brotherhood of Electrical Workers v. Lindgren* we held that the appropriate measure of damages was the actual amount of fees incurred under a contingent fee agreement because calculating fees based on a reasonable hourly rate would not necessarily "achieve the goal of making the [plaintiff] whole"—which is the key element of the inquiry when attorney's fees are awarded as

19. *Id.* at 573 n. 12 (emphasis in original) (quoting MALLEN & SMITH, *supra* note 18, § 27.1).

20. *Gefre I*, 306 P.3d 1264, 1271 (Alaska 2013).

21. *Id.* at 1272 (internal alteration and citation omitted) (quoting *Bauman v. Day*, 892 P.2d 817, 825 (Alaska 1995)).

22. *Id.* (quoting AS 09.10.230).

23. *Id.* at 1274.

24. We note that other damages might conceivably be available in other malpractice cases, but Petro has not shown or even alleged any other

damages that would be compensable under this particular AS 09.10.230 claim.

25. *E.g., United Servs. Auto. Ass'n v. Pruitt ex rel. Pruitt*, 38 P.3d 528, 534 (Alaska 2001) (explaining that, in the context of Alaska Civil Rule 82, an award based on a reasonable hourly rate is appropriate when the actual amount paid does not reflect the "reasonable value" of the services provided, for instance because legal services were provided for free or because a party was self-represented).

26. *See Int'l Bhd. of Elec. Workers Local Union 1547 v. Lindgren*, 985 P.2d 451, 457 (Alaska 1999).

damages.[27] "Where there is a contingent fee contract," we explained, "awarding the fee actually incurred will achieve the desired goal."[28] In this case, where attorney's fees are similarly awarded as damages, the fee calculation must focus on the actual amount paid for work done on the compensable AS 09.10.230 claim.

10. We next conclude that the actual fees paid by Petro are attributable entirely to the AS 09.10.230 claim against Steffen, so the full amount of those fees may be recoverable. As Petro argues, the only fees paid under the contingency agreement were associated with the recovery of the property. Under the agreement, Petro's attorneys were entitled to a set percentage of any recovery Petro received, so they were paid from funds generated by the sale of the recovered property. It is irrelevant that the attorneys have spent time working on other matters, including the malpractice claims against DWT that are not compensable under our holding in *Gefre I*.[29] Petro's attorneys have not yet received any fees for the work they have done on the claims against DWT because those claims have not yet been decided. Indeed, there is a possibility that they may never receive fees for their work on those claims, and, as in any contingent fee agreement, that is the risk an attorney takes by agreeing to work on a contingency basis. But because the settlement of the compensable claim against Steffen is the only proceeding that has yielded a recovery, the full amount of fees paid in connection with that recovery is compensable.

■ 11. This conclusion does not necessarily mean that Petro will automatically recover its full fees if it prevails on remand. The only way for Petro to recover full fees will be to prove that no lawsuit would have been necessary in the absence of DWT's malpractice, meaning that *all* of the fees

incurred are necessarily "fees incurred as a result of the defendant's malpractice" within the meaning of *Gefre I*.[30] Absent such a showing, the fact-finder on remand will have to determine the level of fees that Petro would have incurred in the absence of DWT's malpractice and calculate the extent to which the fees actually paid exceed that amount. In reaching our conclusion, we do not determine the amount of damages to be awarded, and the superior court was correct to note that such a determination is neither necessary nor appropriate at the point of summary judgment. We hold only that Petro is not precluded from arguing for full fees. We accordingly reverse the superior court's decision on this point and remand for a determination of the appropriate level of damages if Petro prevails on the other elements of its claim.

■ 12. When these damages questions are tried on remand, the superior court has correctly concluded that it may "trifurcate" the trial into three separate phases: one to determine DWT's liability under the malpractice claim, one to determine DWT's liability for punitive damages, and a final phase to determine the *amount* of punitive damages. The effect of this decision is to exclude from the initial liability phase certain evidence of DWT's other malpractice, aside from the missed statute of limitations. Such evidence might support an award of punitive damages by demonstrating the alleged outrageousness of DWT's conduct,[31] but it falls outside the scope of the limited malpractice claim being tried. The authority to segment a trial into three phases rests within the superior court's considerable discretion over the structure of a trial under Alaska Civil Rule 42(b). Contrary to Petro's contentions, this discretion is not eliminated by AS 09.17.020.[32] Indeed, the purpose of that stat-

---

27. *Id.*

28. *Id.*

29. 306 P.3d 1264, 1281 (Alaska 2013).

30. *See id.*

31. *See Brandner v. Hudson*, 171 P.3d 83, 89 (Alaska 2007) ("To support a claim for punitive

damages, the plaintiff must show ... that the defendant's conduct was outrageous....").

32. AS 09.17.020(a) provides that the question whether punitive damages should be awarded must generally be determined in the same proceeding as the underlying liability question. However, this statutory provision does not supersede Civil Rule 42(b), which gives trial courts a high level of discretion to conduct parts of a trial

ute is to prevent issues from being tried together that should be tried separately. And here the superior court properly determined that dividing the trial into three phases will reduce the risk of possible prejudice that could arise from admitting evidence of DWT's other alleged malpractice during the liability phase of trial. Moreover, the superior court limited the impact of this decision by ruling that Petro can present evidence of DWT's past conduct during the liability phase of the trial; it held only that "[Petro] cannot present expert testimony that [this conduct] *constituted malpractice* [,] due to the limited nature of the claim on remand." (Emphasis added.) Accordingly, we conclude that the superior court did not abuse its broad discretion under Rule 42(b) when it decided to conduct the trial in three separate phases.

■ 13. On the question of proximate cause, we affirm the superior court's denial of summary judgment. DWT urges us to adopt a rule holding that an attorney who refers a case to another attorney while time still remains on the statute of limitations cannot be liable for failing to advise a client about the statute of limitations. But we decline to adopt such a bright-line rule. Instead, as the superior court acknowledged, "Alaska follows the 'substantial factor test' of

causation, which generally requires the plaintiff to show that the [harm] would not have happened 'but for' the defendant's negligence."[33] This inquiry involves determining whether "the negligent act was so important in bringing about the injury that reasonable individuals would regard it as a cause and attach responsibility to it."[34] We have never adopted a "superseding duty" doctrine as distinct from this general proximate cause doctrine. And in the tort context specifically, the allocation of fault between multiple potentially liable actors is governed by statute under AS 09.17.080.[35] So "to the extent Alaska has even recognized the concept of superseding duty," we have explained, "it must give way to the legislature's allocation of fault mandate" under this statutory provision.[36] Moreover, allocation of fault is rarely appropriate at the summary judgment stage: We have "recognized that determinations of proximate cause usually involve questions of fact within the province of the jury."[37] For all of these reasons, we conclude that the superior court did not err in denying summary judgment on the question of proximate cause. And we conclude for the same reasons that it is premature for us to reach a decision on the actual allocation of fault under AS 09.17.080.

■ 14. Finally, we confirm that our previous decision in this case, *Gefre I*, vacated

separately "in furtherance of convenience or to avoid prejudice." Article IV, section 15 of the Alaska Constitution authorizes this court to "make and promulgate rules governing practice and procedure in civil and criminal cases in all courts." We have explained that "[t]he legislature may change these rules ... only by a two-thirds vote of each house" and "only if the particular enactment states that its purpose is to change a court rule." *State v. Native Village of Nunapitchuk*, 156 P.3d 389, 395 & n. 6 (Alaska 2007) (citing *Leege v. Martin*, 379 P.2d 447, 451 (Alaska 1963)). Here, both the title and text of AS 09.17.020 convince us that it did not intend to alter a trial judge's discretion under Civil Rule 42(b), so that discretion remains intact.

33. *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007) (citing *Vincent by Staton v. Fairbanks Mem'l Hosp.*, 862 P.2d 847, 851 (Alaska 1993)).

34. *Id.* (citing *Vincent by Staton*, 862 P.2d at 851).

35. AS 09.17.080 provides for apportionment of fault "[i]n all actions involving fault of more than one person." *See* AS 09.17.080(a).

' AS 09.17.080(a)(2) requires the fact-finder to apportion fault according to "the percentage of the total fault that is allocated to each claimant, defendant, third-party defendant, person who has been released from liability, or other person responsible for the damages."
AS 09.17.080(b) specifies that "[i]n determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each person at fault, and the extent of the causal relation between the conduct and the damages claimed."

36. *Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 292 (Alaska 2012) (citing *Sowinski v. Walker*, 198 P.3d 1134, 1149–56 (Alaska 2008)).

37. *Winschel*, 171 P.3d at 148 (first citing *P.G. v. State, Dep't of Health & Human Servs., Div. of Family & Youth Servs.*, 4 P.3d 326, 334 (Alaska 2000); then citing *Turnbull v. LaRose*, 702 P.2d 1331, 1336 (Alaska 1985)).

the prior superior court judgment in its entirety. When we vacate a judgment and remand to the superior court for further proceedings, the attorney's fee award associated with that judgment is "necessarily vacated" at the same time.[38] This is true even when we uphold some portions of the superior court's judgment but remand on other issues because in that situation "prevailing party status is undetermined." [39] DWT has articulated no theory under which it is entitled to retain the funds paid by Petro under this vacated judgment. Accordingly, we reverse the superior court's decision that allowed DWT to retain those funds during the pendency of the litigation, and we order the funds to be returned to Petro. And because we reverse and vacate the superior court's grant of summary judgment in the proceeding currently before us, we similarly vacate the fee award associated with that judgment.

15. On all other issues in this case, we conclude that review would be premature.

Entered at the direction of the court.

---

**38.** See, e.g., Cooper v. Thompson, 353 P.3d 782, 796 (Alaska 2015), reh'g denied (Aug. 18, 2015).

**39.** See Mills v. Hankla, 297 P.3d 158, 175 (Alaska 2013).